IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3100-FL

| | | |
|---|---|---|
| DARRYL BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF PRISONS, TED PALUCH, MICHAEL WILLIAMS, and D. JOHNSTON, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 25). The motion was briefed fully and in this posture the issues raised are ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, a federal inmate proceeding pro se, commenced this action by filing complaint on April 10, 2019, asserting claims for violations of his civil rights pursuant to pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., and a tort claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. The complaint alleges defendants served plaintiff pork during Ramadan, in violation of his rights to freely exercise his religion under the First Amendment and the RFRA. Plaintiff further alleges defendants' conduct amounted to

intentional infliction emotional distress under North Carolina law. Plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

Following an initial period of frivolity review, the court allowed plaintiff to proceed with the claims described above. Defendants filed the instant motion to dismiss on March 12, 2020, arguing that plaintiff has failed to state a claim on which relief can be granted, that certain claims are barred by sovereign immunity, and that plaintiff failed to exhaust administrative remedies prior to filing this action. Plaintiff responded in opposition on April 22, 2020.

### STATEMENT OF THE FACTS

The facts, as alleged in plaintiff's complaint, may be summarized as follows. Plaintiff, a federal inmate, is an observant Sunni Muslim. (Compl. (DE 1-1) ¶ 4). His religious beliefs proscribe "consuming pork or pork by-products." (Id. ¶ 5). While housed at the Federal Correctional Center in Butner, North Carolina, defendants "maliciously prepared and served pork and pork by-products to plaintiff during and after [the] 'Ramadan' fast without fair warning" in violation of Federal Bureau of Prisons ("FBOP") policy. (Id. ¶¶ 4, 6, 8).

The individual defendants, Ted Paluch ("Paluch"), Michael Williams ("Williams"), and D. Johnston ("Johnston") are FBOP employees responsible for food service at FCI-Butner Low. (Id. ¶¶ 11-13). Defendant Paluch, in particular, is responsible for developing and maintaining daily meal plans and menu requirements, including any religious dietary accommodations. (Id. ¶¶ 13(a), 13(e), 22). In June 2018, defendants failed to advise plaintiff that certain foods served to plaintiff contained pork products. (Id. ¶¶ 13(e), 17, 36; Compl. Exs. (DE 1-2) at 1).[1] Because

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document

2

plaintiff inadvertently consumed pork products, he violated his sincere religious beliefs and suffered stomach ailments and emotional distress. (Compl. (DE 1-1) ¶¶ 4-5, 31, 38).

**COURT'S DISCUSSION**

A.   Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

3

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.   Bivens First Amendment Claim

Defendants argue plaintiff's First Amendment free exercise claim is not cognizable under Bivens in light of recent Supreme Court law. In Bivens, the Supreme Court recognized a damages remedy against federal officers for Fourth Amendment violations where the officers searched a residence and arrested the plaintiff without a warrant or probable cause. 403 U.S. 388, 397 (1971). Since Bivens was decided in 1971, the Supreme Court has authorized a damages remedy against federal officers for constitutional violations in only two additional contexts: 1) a Fifth Amendment equal protection claim alleging gender discrimination in congressional employment, see Davis v. Passman, 442 U.S. 228 (1979); and 2) an Eighth Amendment claim by a federal prisoner alleging prison officials were deliberately indifferent to his serious medical needs by failing to treat his asthma, see Carlson v. Green, 446 U.S. 14 (1980). See also Earle v. Shreves, __ F.3d __, 2021 WL 896399, at *2 (4th Cir. 2021). The Court, however, "has declined to countenance Bivens actions in any additional context." See Tun-Cos v. Perrotte, 922 F.3d 514, 521 (4th Cir. 2019) (collecting cases).

The Supreme Court recently explained that Congress is better positioned to extend Bivens liability to new contexts not previously recognized by the Court, and instructed federal district and appellate courts to conduct a rigorous analysis before authorizing a Bivens remedy in any new context without congressional approval. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1856-57 (2017); see also Tun-Cos, 922 F.3d at 521-23. The Court established the following framework for analyzing the availability of a Bivens remedy:

4

> First, courts must inquire whether a given case presents a "new Bivens context." If the context is not new . . . then a Bivens remedy continues to be available. "But if the context is new, then courts must, before extending Bivens liability, evaluate whether there are special factors counselling hesitation in the absence of affirmative action by Congress. If any such special factors do exist, a Bivens action is not available."

Earle, 2021 WL 896399, at *3 (quoting Tun-Cos, 922 F.3d at 522-23).

The first step of this inquiry asks whether the case presents a "new context" for Bivens liability because it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a Bivens remedy. Ziglar, 137 S. Ct. at 1859; Tun-Cos, 922 F.3d at 522-23. "A radical difference is not required." See Tun-Cos, 922 F.3d at 523. The Court, "without endeavoring to create an exhaustive list," noted that a case might differ in a meaningful way based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 137 S. Ct. at 1859-60.

Here, plaintiff alleges defendants violated the Free Exercise Clause of the First Amendment by failing to warn him that certain foods contained pork products, in violation of his religious dietary restrictions. This claim presents a new context because it "ha[s] no analogue in the Supreme Court's prior Bivens cases." See Tun-Cos, 922 F.3d at 525. Indeed, "[t]he Supreme Court has never recognized a First Amendment based Bivens remedy in any context." Earle, 2021 WL 896399, at *3 (citing Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012); Ashcroft, 556 U.S.

5

at 675; Bush v. Lucas, 462 U.S. 367, 368 (1983)) (concluding First Amendment retaliation claim presented a new Bivens context).

Because this case involves a new Bivens context, the court proceeds to the second inquiry: whether "special factors" counsel hesitation in expanding Bivens to this new context. Ziglar, 137 S. Ct. at 1857 (quoting Carlson, 446 U.S. at 18); Tun-Cos, 922 F.3d at 523. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S. Ct. at 1857-58. A special factor counselling hesitation "must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. Extending Bivens to a new context is a "disfavored judicial activity" where Congress is generally better suited to determine whether a new damages remedy should be authorized. Id. at 1857. Thus, "[i]f any such special factors do exist, a Bivens action is not available." Tun-Cos, 922 F.3d at 523; see also Earle, 2021 WL 896399, at *3.

The Supreme Court has emphasized two special factors that counsel hesitation in extending Bivens to a new context: 1) whether an "alternative remedial structure is present" and 2) whether extending Bivens would violate separation-of-powers principles. Ziglar, 137 S. Ct. at 1857-58; see also Tun-Cos, 922 F.3d at 525-27. Additional relevant special factors include, inter alia, 1) "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies"; 2) whether Congress previously has enacted legislation in the area, "making it less likely that Congress would want the judiciary to interfere"; 3) whether a damages remedy is necessary

6

to deter future similar violations; 4) whether the claim addresses broader policy questions delegated to an administrative agency; and 5) whether national security interests are at issue. Ziglar, 137 S. Ct. at 1856-63 (citing Wilkie v. Robbins, 551 U.S. 537, 561-62 (2007); Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 73-74 (2001); FDIC v. Meyer, 510 U.S. 471, 485-86 (1994); United States v. Stanley, 483 U.S. 669, 679 (1987); Chappell v. Wallace, 462 U.S. 296, 302 (1983); and Bush v. Lucas, 462 U.S. 367, 385-88 (1983)).

Here, plaintiff has an alternative remedial program available to him, in the form of the FBOP's administrative remedy program. Earle, 2021 WL 896399, at *4. Plaintiff can obtain meaningful relief from the program, including changes to FBOP policy regarding religious dietary accommodations. See id. at *4 (citing 28 C.F.R. § 542.10(a)). The fact that a damages remedy is not available through the administrative remedy program does not change this analysis. Tun-Cos, 922 F.3d at 526-27 ("The plaintiffs are correct that the protections provided by the INA do not include a money damages remedy and often do not redress constitutional violations that occur apart from removal proceedings. But this misses the point, for the relevant question is not what remedy the court should provide for a wrong that would otherwise go unredressed but instead whether an elaborate remedial system should be augmented by the creation of a new judicial remedy." (internal quotation marks and alteration omitted)). Accordingly, the existence of the FBOP's administrative remedy program is a special factor counselling hesitation.[2]  Id.

---

[2] The court recognizes plaintiff raises concerns about the availability of the FBOP's administrative remedy procedure in this case. (See Pl.'s Resp. (DE 31) at 2-4). Even assuming, however, that the administrative remedy program was not available to plaintiff, the remaining special factors discussed herein strongly militate against recognizing a Bivens remedy for plaintiff's First Amendment claim. Tun-Cos, 922 F.3d at 523 ("If any such special factors do exist, a Bivens action is not available.").

7

Another special factor counselling hesitation is that Congress has enacted legislation in this context. The RFRA permits federal inmates "whose religious exercise has been burdened" to "obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c); see also Lebron v. Rumsfeld, 670 F.3d 540, 556-57 (4th Cir. 2012). And the Supreme Court recently held that that the RFRA permits damages actions against federal officials in their individual capacities. See Tanzin v. Tanvir, 141 S. Ct. 486, 489 (2020). Where the RFRA provides more protection for religious exercise by federal inmates than the First Amendment, and a damages remedy is available under the statute, "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." See Ziglar, 137 S. Ct. at 1858; Tanzin, 141 S. Ct. at 489. Accordingly, the court agrees with defendants that plaintiff's claims seeking damages under the Free Exercise Clause are not cognizable Bivens claims.

2. RFRA and FTCA Claims

Defendants do not address plaintiff's RFRA claim in the instant motion to dismiss. As the court explained in its November 14, 2019, order, plaintiff's complaint arguably alleges sufficient facts to state a claim under the RFRA. (DE 8 at 2). While plaintiff did not specifically cite to the RFRA in his pro se complaint, the court is obligated to liberally construe the complaint "to raise the strongest arguments that [it] suggest[s]" without regard to the specific labels plaintiff gives his claims. See Martin v. Duffy, 977 F.3d 294, 298 (4th Cir. 2020); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978); Hairston v. DVA, Reg'l VA Off. Martinsburg, __ F. App'x __,

8

Case 5:19-ct-03100-FL   Document 37   Filed 03/16/21   Page 8 of 10

2021 WL 219541, at *2 (4th Cir. 2021). Accordingly, the motion to dismiss is denied with respect to plaintiff's RFRA claim.[3]

Defendants also do not meaningfully address plaintiff's FTCA claim, which is squarely presented in plaintiff's complaint. (Compl. (DE 1-1) ¶¶ 38-40). Although defendants state in passing that the claim is subject to dismissal on sovereign immunity grounds, (Defs' Mem. (DE 26) at 7-8), the FTCA expressly waives sovereign immunity for certain tort claims, subject to various exceptions. Millbrook v. United States, 569 U.S. 50, 51 (2013). In the absence of substantive argument directed specifically to the FTCA claim, defendants' motion to dismiss is denied with respect to this claim.

3. Administrative Exhaustion

Finally, the court turns to defendants' argument that plaintiff failed to exhaust administrative remedies. See 42 U.S.C. § 1997e(a); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017). Plaintiff argues that this affirmative defense is not capable of resolution at the motion to dismiss stage where he disputes that he failed to exhaust, or in the alternative that the FBOP's administrative remedy program was unavailable to him. (Pl's Resp. (DE 31) at 2-4); see also Ross v. Blake, 136 S. Ct. 1850, 1858-60 (2016). On these particular facts, the court agrees with plaintiff. (See Compl. Exs. (DE 1-2) at 7 (suggesting plaintiff did not receive the Central Office's rejection notice for the relevant administrative remedy appeal, and that plaintiff should consider the failure to send the notice a denial at that level).

---

[3] Defendants argue the "claims" against the United States Department of Justice, the FBOP, and the individual defendants acting in their official capacities are barred by sovereign immunity, but they do not address whether plaintiff's RFRA claim abrogates sovereign immunity, at least as to plaintiff's claims for injunctive relief. See Tanzin, 141 S. Ct. at 492-93 (suggesting sovereign immunity may bar official capacity claims for damages under the RFRA). And the court declines address this issue sua sponte. Similarly, in the absence of argument from defendants regarding the RFRA claim, resolution of defendants' qualified immunity defense is premature at this stage

9

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 25) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to plaintiff's <u>Bivens</u> claim and denied as to plaintiff's RFRA and FTCA claims. An initial order will follow.

SO ORDERED, this the 16th day of March, 2021.

/s/ Louise V. Flanagan
LOUISE W. FLANAGAN
United States District Judge